DEL ROSARIO ET AL., PLAINTIFFS, APPELLANTS AND APPELLEES, *v.* RUCABADO ET AL., DEFENDANTS, APPELLEES AND APPELLANTS.

Appeal from the District Court of Guayama in an Action of Ejectment.

No. 1177.—Decided on reconsideration January 28, 1916.

In this case Chief Justice Hernández and Justice Aldrey voted to reverse that part of the judgment appealed from by the defendants and Justices Wolf and del Toro voted to affirm the same. On account of the fact that Mr. Justice Hutchison, who was the trial judge, took no part in the decision of the appeal, a divided court resulted and thereby that part of the judgment appealed from by the defendants was affirmed.

OPINION OF MR. JUSTICE DEL TORO.

JURISPRUDENCE—CONFLICT BETWEEN JUDGMENT OF SUPREME COURT OF UNITED STATES AND THAT OF PORTO RICO.—When a judgment of the Supreme Court of Porto Rico is in conflict with a judgment of the Supreme Court of the United States, the jurisprudence established by the latter must prevail.

PROPERTY OF MINOR—PAYMENT OF DEBT—PARTITION.—Under the law of Porto Rico as it was in 1892, a widow and a guardian *ad litem* had no authority to give the property of a minor child in payment of a debt of its deceased father by means of a private sale, and there was no authority in any judge to approve such a voluntary partition as that involved in this action.

ID.—EJECTMENT—RESCISSION OF PARTITION.—Conveyance of a minor's property by private sale in Porto Rico unauthorized by the local law is void even if approved by a judge and on coming of age the minor may sue in ejectment under the provisions of the Civil Code of Porto Rico then in force and applicable to this case, without first seeking the rescission of the partition.

ID.—PARTITION OF INHERITANCE—CONVEYANCE TO CREDITORS—AUTHORIZATION OF COURT.—Conveyances made direct to creditors in satisfaction of their claims in the partition of an estate in which minors are interested without first obtaining the authorization of the court required by law for the sale of property belonging to minors are absolutely null and void.

APPEAL—JURISDICTION.—When an appeal is taken from only a part of a judgment, this court cannot consider or pass upon that part which has not been appealed from.

EJECTMENT—INVALIDITY OF CONVEYANCES.—Although this is an action of ejectment, the complaint contains other prayers for the annulment of certain conveyances and their cancellation in the registry of property. Under the theory finally adopted by the trial court, the said annulment and cancellation came to be the only questions which were definitely decided in the action. *Held:* That the conveyances in question being absolutely null and void, according to the doctrine established by the said opinion, and in view of all the attendant

circumstances, the questions raised may be considered and decided in this action notwithstanding the dismissal of the action of ejectment.

### OPINION OF MR. JUSTICE ALDREY.

EJECTMENT—RESTITUTION OF PROPERTY—RENTS AND PROFITS—APPEAL—INCIDENTAL CLAIM.—When a plaintiff sues in ejectment to recover the third part of a property and prays that he be reinstated in the possession and ownership of the same and be allowed the rents and profits accruing during the time he had been deprived of the use of his property, if the judgment refuses such restitution and the plaintiff does not appeal from that part of it, not only has he no right to recover the said rents and profits because the claim is incidental to the action of ejectment dismissed by the court below, but this court is without jurisdiction to consider the question of restitution because there is no appeal from it and, therefore, no practical result can be obtained in this particular case from a consideration of that of *Longpré* v. *Díaz*, 237 U. S. 512.

ID.—TITLE OF DEFENDANT.—Before deciding upon the invalidity of the title of a person from whom it is sought to recover a certain property, the title of the person suing in ejectment should first be established.

ID.—TITLE OF DEFENDANT—DEFENSE.—Even when in addition to the allegations in the ejectment suit the complaint contains other allegations tending to show that the defendant's title is null and void and prays for a decree to that effect, unless the title on which the plaintiff rests his claim arises from the declaration of invalidity of the title of the defendant, such allegations of invalidity should be considered only as an anticipation of the defense and should not be passed upon when the action to which they are opposed is defeated.

ID.—ANNULMENTS.—When the annulments prayed for in a complaint are not the cause but the effect of the main action of ejectment and the latter is defeated, any pronouncements regarding such annulments would be superfluous.

The facts are stated in the opinions.

*Messrs. Adolfo Dones* and *Damián Monserrat, Jr.,* for the plaintiff-appellants.

*Messrs. Muñoz & Brown* for the defendant-appellants.

### OPINION OF MR. JUSTICE DEL TORO IN WHICH MR. JUSTICE WOLF CONCURS.

This is a case involving a conveyance of property belonging to minors in satisfaction of debts contracted by their predecessor in interest. On May 24, 1915, after hearing and considering the case, this court sustained the appeal of defendants Mateo Rucabado and Manuel Otero, dismissed that of the plaintiffs and consequently reversed the judgment appealed

from. On June 29, 1915, the plaintiffs moved for a reconsideration of our decision mainly on the ground that the Supreme Court of the United States, in the case of *Longpré* v. *Díaz*, 237 U. S. 412, had established doctrine contrary to our holding on the essential point involved in our decision. By an order of July 7, 1915, this court sustained the motion for reconsideration and set the case for a rehearing to be held on November 16, 1915, on which date the attorneys for both parties appeared and argued the same orally and by briefs.

Defendants Rucabado and Otero contended at the rehearing and in their brief that, in the first place, the court should not have reconsidered its judgment (*a*) because the motion was not made at the proper time or in the proper form; (*b*) because the motion should have been argued separately and before ordering a rehearing, and (*c*) because, even supposing that the motion was made in time and in proper form, it did not show sufficient grounds to justify the granting of the reconsideration. The defendants cited many authorities in support of the foregoing contentions. Perhaps they are right. It may be that for technical reasons this court could refuse to reconsider its decision of May 24. But the fact is that this court was of the opinion that it should lose no time in establishing the jurisprudence which should govern in cases involving such an important legal question, and as it still retained control of its judgment, it decided, in the interest of the public, to reconsider its decision and reopen the appeal for argument by the parties.

In view of the foregoing, let us see what the record shows. From a careful consideration of the pleadings and the evidence it appears that Luz María del Rosario died intestate in the town of Cayey on October 25, 1902. On October 25, 1903, the court of jurisdiction designated as his heirs his legitimate children María Dolores, Ramón Miguel, Josefa Antonia, Luz Salomón, Francisco Rafael, and Julio Cesar, and his widow, Juana Bayonet. On December 9, 1903, the court rendered judgment decreeing that Eduardo and Juan

Pablo Rosario Meléndez, Sandalio Rosario Torres, and Marcelina and Luz Rosario Rivera were acknowledged natural children of the said Luz María del Rosario and that Alejandrina Manzano Rosario was his acknowledged natural grandchild, the succession of Luz María del Rosario being thus composed of six legitimate children, the widow, five acknowledged natural children and one acknowledged natural grandchild.

The heirs being known, Attorneys Antonio Sarmiento and Luis Muñoz Morales, who were appointed partitioners for that purpose, proceeded to inventory, appraise, liquidate and partition the property left by the deceased. The plaintiffs, who were minors at that time, were represented in these proceedings by their defensor, Juana Campos, who was appointed as such by the court. Certain debts were acknowledged in favor of defendants Mateo Rucabado, Robustiano Mélendez, Manuel Otero Valera, and José Ramírez Muñoz and it was agreed to convey certain real property to said creditors in satisfaction thereof, which was done. The proceedings were approved by the District Court of Humacao and were protocoled in the notarial office of Cayey on June 4, 1904. The creditors entered into possession of the properties so acquired and recorded their titles in the proper registry of property.

This being the state of affairs, the legitimate children of the said Luz María del Rosario brought the present action, praying (1) that the said conveyances be declared null and void as to a third part thereof; (2) that the records of the said conveyances in the registry of property be canceled also as to a third part; (3) that defendants Meléndez, Rucabado, Otero, and Ramírez pay to the plaintiffs certain sums of money for rents and profits during the time they were deprived of the use of their properties; (4) that the plaintiffs be reinstated in the possession and ownership of one-third of all and each of the properties conveyed; (5) that the defendants pay the costs and attorney fees.

Defendants Rucabado and Otero demurred to and answered the complaint through their attorneys, Muñoz &

Brown. Defendant Ramírez demurred to and answered the complaint through his attorney, Antonio Sarmiento, and defendant Alejandrina Manzano answered the complaint through her attorneys, Palacios and Tous Soto, admitting the allegations of the complaint, "but understanding that the properties sought to be recovered as well as the rents and profits should be restored to all the heirs of Luz María del Rosario for distribution among them in the manner prescribed by law." It is not shown that the other defendants filed any pleading or even that they were summoned. At the trial, on motion of the plaintiffs, defendants Ramírez and Meléndez were eliminated from the complaint.

After examining the evidence introduced by the plaintiffs and by defendants Rucabado and Otero, apparently the only parties who appeared at the trial, the court rendered judgment sustaining the complaint as to its first and second prayers and dismissing it as to the third and fourth, without special imposition of costs "and without prejudice to any right the defendants might have to the rents and profits claimed but not proved, upon their establishing such right and proving the amount thereof in any other proper action, or to any other right they or any of the parties might have which have not been expressly and finally disposed of by this judgment." Hence, the judgment of the district court went no further than to declare null and void a third part of the conveyances of the properties described in the complaint to defendants Rucabado and Otero in the proceedings for the partition of the property left by Luz María del Rosario Torres, and to order the cancellation of the records of said conveyances in the registry of property as to a third part thereof.

The plaintiffs appealed from that part of the judgment which refused to allow the rents and profits and also from that part which disposed of the question of costs and attorney fees. Defendants Rucabado and Otero were not satisfied with the judgment rendered and appealed therefrom to this court.

In view of the foregoing facts this court, in its opinion of May 24, 1915, entered upon a consideration of the appeal taken by defendants Rucabado and Otero and expressed itself as follows:

"Laying aside the question which might possibly be raised as to whether the plaintiffs have the right to bring this action in the manner in which they did, we will proceed to consider and decide on its merits the fundamental allegation of the complaint filed by the legitimate children of Luz María del Rosario, to wit, that the conveyances made to defendants Rucabado and Otero in payment of their claims are null and void because they are real alienations and the authorization of a court of competent jurisdiction was not first obtained in order to execute them.

"There is no doubt as to how a conveyance of real property in satisfaction of a debt should be classified. It is plainly an alienation of real property. Nor is there any doubt of the fact that when the conveyances were made in this case the law required, as it does now, the authorization of the court for the sale of real property belonging to minors.

"But, is this a case pure and simple of the alienation of real property belonging to minors? Let us see.

"The Legislature has enacted full and definite rules to be followed when a person dies leaving property. Among these rules there is one as follows: 'Creditors, recognized as such, may oppose the division of the inheritance until they are paid or the amount of their credits is secured.' Section 1049 of the Revised Civil Code and article 1082 of the Spanish Civil Code.

"Commenting on the said rule Manresa says:

" 'The heirs have the right, of course, to partition or divide the estate, but the partition should include only the property and rights remaining after the obligations and debts of the succession have been satisfied; otherwise the estate would appear to contain property which it really does not and the partition would include assets which do not belong to the heirs.' VII Manresa, Spanish Civil Code, 756.

"In the present case Luz María del Rosario died intestate, leaving property. Partitioners were duly appointed and they inventoried, appraised, liquidated and divided the hereditary estate. There were debts and it was arranged with the creditors to pay the same by conveying certain real properties to them. There were minor heirs

and a defensor was appointed to represent them, the proceedings being submitted afterwards to the court for approval.

"The heirs, including the minors represented by their defensor, assented. If the heirs had all been of age their consent would have been sufficient, but there were minors and the approval of the court of jurisdiction was applied for and obtained.

"It is true that the minors had an interest in all the property left by their father from the moment of his death, but it is also true that the estate was liquidated and the debts were paid according to law, the heirs, whether of age or not, being entitled only to what remained. Law VIII, Title XXXIII of *Partida* 7, provides that the heritage is 'the real and personal property of a deceased person after deducting his debts and the property belonging to others.'

"For that reason, on February 9, 1887, the General Directorate of Registries held that property conveyed in payment of debts passed directly from the predecessor in interest to the creditors. Therefore, the first question should be answered in the negative. Real property conveyed in payment of debts in the liquidation and partition of an estate of inheritance when some of the heirs are minors, should not be classified as a separate act of alienation within the meaning of the provisions of the Civil Code requiring the authorization of the court for the alienation of property belonging to minors, but as a part of the partition which should be governed by the law applicable to that matter.

"The cases are distinct and the Legislature has prescribed certain proceedings in each to protect the rights of the minor. When the minor is the absolute owner of real property the authorization of the court must first be obtained in order to alienate it, and said authorization should be given only when the utility or necessity of the conveyance is shown. But when the minor has only a hereditary right subject to liquidation, it is not necessary to apply for the authorization of the court and first show the necessity or utility of the payment of the debts because the necessity of such payment is manifest.

"The court intervenes in both cases. In the first its intervention is necessary before the conveyance naturally, because the case arises during the administration of the property of the minor and is due to various causes which require special consideration before it can be decided whether or not the proposed transaction is beneficial or essential to the interests of the minor. In the second case the intervention of the court comes after the transaction logically, because the necessity for the payment of the debts of the predecessor in

interest has been fixed already by the Legislature and what, the law requires for the greater security of the minor is that the court examine and approve or refuse to approve, as the case may be, the acts of partition in which it intervenes before the same can have full effect.

"In their brief the plaintiffs cite various decisions of the General Directorate of Registries in support of the theory which they maintain. The said Directorate first held on February 9, 1887, that when specific property is allotted to an heir for the payment of debts, even when there are minor heirs, it is not necessary to apply for the authorization of the court beforehand in order to alienate the interest which the minors had in the said property; and later, in the various decisions cited by the plaintiffs, it distinguished the said case from that in which the property is conveyed directly to the creditor in satisfaction of his claim. We have meditated carefully in attempting to discover the ground on which the Directorate distinguished the two cases and have been unable to find any reasonable solution. In our opinion the nature of the transactions in both cases is the same, both being acts of partition and not of the special alienation of real property belonging to minors.

"This being our opinion, the complaint has no foundation. The partition was made according to law and therefore cannot be annulled as to the conveyance of property for the payment of debts of the estate.

"Therefore, the appeal taken by defendants Rucabado and Otero should be sustained and it is not necessary even to discuss the appeal taken by the plaintiffs, which should be dismissed."

Matters being thus, on June 1, 1915, the Supreme Court of the United States decided the case of *Longpré* v. *Díaz, supra*. Below we transcribe the facts as they appear in the opinion of the court delivered by Mr. Chief Justice White and the consideration and decision of the question of law involved in the case now before us for review:

"Clemente Díaz y González, residing in Vieques, Porto Rico, there died in April, 1890, leaving a widow and an infant son, the issue of their marriage. The deceased was the recorded owner of a piece of farming property known as Destino, as well as of other pieces of property of small area and value, all of which were his separate estate, having been acquired before marriage. By the provisions of the code it is conceded that the minor was the sole legal heir of his

father, taking all his property, subject however to a usufruct of one-third in favor of his mother, the widow. In April, 1892, in conciliatory proceedings before a municipal magistrate preparatory to a suit to be brought by Ramón Aboy Benítez to enforce a debt which he asserted against the estate, the widow admitted that Aboy was a creditor of the estate for a little over three thousand *pesos,* evidenced as to a considerable part by the notes of the deceased and the remainder embracing doctors' bills, taxes and money advanced for the support of the widow and infant child. The creditor, presumably in consequence of this acknowledgment, agreed to await payment until March, 1893, when a lease would expire which existed on the property known as Destino in favor of an agricultural partnership styled Mouraille & Martineau. In the following August, 1892, on the petition of the widow the court of first instance of Humacao, within whose territorial jurisdiction Vieques was situated, recognized the minor as the sole heir of the father and as such entitled to his estate subject to the usufruct in favor of the widow as above stated. The court subsequently on the petition of the mother appointed a paternal uncle of the minor, Santos Díaz y González, his guardian *ad litem* to act for and represent the infant in matters where from conflict of interest or otherwise his mother would be incapacitated from so doing. Thereafter Aboy by a notarial. act transferred to the firm of Mouraille & Martineau the greater part of his acknowledged debt, the widow intervening in the act for the purpose of taking cognizance of the transfer and in addition to recognize certain small debts held by the firm against the estate.

"Contemplating an extra-judicial partition, the widow and the guardian *ad litem* then united in the appointment of an accountant to accomplish that purpose, who drew an agreement of so-called partition which was executed by the parties on December 27, 1893. In the agreement the liabilities of the estate were enumerated and its assets were stated and valued and the property of the entire estate was conveyed. For the purposes of this case it suffices to say that as the debt due to the firm of Mouraille & Martineau was as stated precisely equal to the value affixed to the farm Destino, that property was transferred and delivered to the firm in extinguishment of its debts and a like course by transferring other property was pursued as to the comparatively small debt of Aboy. The small remainder of the estate was declared to be subject to the ownership of the minor and the one-third usufruct of his mother. To make this private agreement for voluntary and extra-judicial partition authentic in form by placing it of record, the widow, on February

1, 1894, appeared before a notary and exhibiting the agreement deposited it among the archives of his office after making the necessary declarations to accomplish that purpose. This being done, a copy of the agreement as authenticated and deposited was presented to the judge of the court of first instance of Humacao for his approval, which was by him given with a direction to the officer of registration to place the agreement as authenticated upon the public records. In April, 1894, this was done, thus transferring on the public record the title of the farm Destino from the name of Díaz, the deceased, to the name of the firm of Mouraille & Martineau. It is conceded, however, that in the meantime, in February, 1894, as a result of the transfer made under the so-called partition agreement delivery of the possession of the farm Destino was made to the firm and they held the same asserting ownership thereof.

"By the provisions of a notarial act executed in May, 1894, which was inscribed upon the public registry, for the purpose of dividing the assets of the firm of Mouraille & Martineau among the partners, the title to the farm Destino passed from the firm to the individual name of Victor Mouraille. By his death which, although the date is somewhat obscure in the record, occurred probably in January, 1895, the property passed to the plaintiffs in error, his widow and heirs. Whether they took as the result of intestacy or by will is not disclosed and is immaterial to consider, since it is conceded that the rights enjoyed by them were but a continuation of those possessed by Mouraille himself in virtue of the proceedings conveying the property Destino to the firm and of the attribution of the property to Mouraille in the division of the firm assets.

"More than twenty years after the death of his father the minor, Clemente Díaz, having been duly emancipated, commenced in a local court in Porto Rico this suit against the present plaintiffs in error, the widow and heirs of Mouraille, in revendication of the property called Destino previously transferred to them under the circumstances above stated. They removed the case to the court below and successfully resisted a motion to remand. Thereupon the petition was amended. As amended in substance it asserted that the plaintiff was the duly registered owner of the property, and that his possession had been wrongfully disturbed in 1894 by the action of the defendants or their author in taking possession of the same. A brief outline of the facts which we have previously stated was made and the prayer was for a recovery of the farm called Destino and for a decree for fruits and revenues from the time of taking possession in 1894. An answer was filed which was demurred to for insufficiency. It

would seem that before the demurrer was passed upon an amended
and fuller answer was filed. By this answer the facts which we
have previously stated were in substance admitted. The capacity
of the plaintiff to sue was challenged, first, because as an heir of
his father he had no right to do so, and second, because he was
without authority to recover the property without previously suing
to rescind the partition proceedings and the recorded title resulting
therefrom and thus collaterally assail those proceedings. The want
of right to recover as a question of merits was denied, first, because
of a term of prescription which was pleaded, second, because of the
validity of the partition proceedings and the conclusive effect of
the judgment of approval given to them by the proper court, third,
because a suit to rescind such proceedings was barred by a prescrip-
tion which was also pleaded, fourth, because in any event the plaintiff
was without authority to sue to recover the fruits and revenues of
the property because during his minority they were collectible, if
due, by his mother as administrator of his estate and because even
in case there was a right to evict, the fruits and revenues could not
be recovered from Mouraille because of his good faith, nor from the
defendants holding under him because of their good faith. This
answer was again demurred to as stating no defense. The court
sustained the demurrer in so far as it questioned the sufficiency of
the technical defenses advanced by the answer on the ground that
the proceedings of so-called partition were absolutely void and the
approval affixed by the judge of the court of first instance of Hu-
macao was equally null because of an absolute want of jurisdiction
on his part to take the action in the premises which he had taken.
His answer was again amended. The defenses to the merits con-
cerning the want of right to recover the property or its fruits and
revenues as well as prescription were all in the fullest way reasserted,
and in addition a counterclaim was presented asserting that the
defendants in the event of eviction were entitled to recover the
amount of the debt owned by Mouraille & Martineau which had
been used in the so-called partition proceedings to pay for the Destino
property, with interest thereon at six per cent.

"Upon the issues which were made by this answer and counter-
claim the case came finally to trial before a jury. On the opening
the plaintiff to make out his title after establishing his heirship,
offered the documents establishing the facts concerning the partition
which we have stated and the defendants expressing their purpose
to offer no further evidence on those subjects, the court applying the
conclusion which it had reached on the demurrer as to the absolute

nullity of the partition sale, instructed the jury that on the question of title there must be a verdict for the plaintiff. Thereupon the trial proceeded solely as to the right to recover fruits and revenues and no evidence on any other subject was offered. It was agreed between the parties that there should be deducted from any sum of fruits and revenues found to be due one-third thereof upon the theory that they belonged to the widow of Díaz, the mother of the plaintiff, in virtue of her usufruct and were not involved in the suit. And it was further admitted that the claim asserted in the counterclaim was valid and there should be a verdict for the recovery of the sum claimed with interest. Considerable evidence as to fruits and revenues was offered and some exceptions were taken by the defendants to rulings of the court admitting evidence concerning the subject on the ground that by its admission too great leeway was afforded for speculative damages. The defendants specifically requested that the jury be instructed that if they were in good faith they were not liable for fruits and revenues, which was refused and an exception taken. And an exception was also reserved concerning the right to award fruits and revenues to the plaintiff for the period covered by his minority because of the right of his mother to administer his property during such time. There was a verdict and judgment for the property and for the rents and revenues during the entire term of adverse possession, whether held by Mouraille & Martineau, by Mouraille himself, or by the defendants holding under him.

"There are twenty-seven assignments of error, but we shall confine our attention to the questions pressed in argument. The validity and effect of the so-called partition proceedings on the title of the property sued for underlies every consideration urged and we therefore, as did the court below, first consider that subject. While it is obvious that the property left by the deceased and which passed to his heir, the minor, was bound for the debts of the deceased and subject to be disposed of under lawful proceedings to pay the same, we think it is indisputably apparent that there was an absolute want of authority on the part of the widow and guardian *ad litem* to give the property of the minor in payment of an alleged debt of the estate of the father. We say this because the so-called partition and the sale of the property by a mere private agreement were directly in the teeth of the requirements of the law concerning the administration and sale of a minor's property and therefore such mere private sale created no rights whatever conflicting with the title vested in the minor in virtue of his heirship. And we are of

the opinion moreover that by the same token it conclusively results that the judge of the court of first instance of Humacao was absolutely without jurisdiction to approve the so-called voluntary partition proceedings and therefore that no rights whatever arose from such sanction. We do not stop to refer to the requirements of the local law which were absolutely disregarded in the private sale relied upon, since in substance it is not disputed that if the proceedings by which the property was sold had the character which we affix to them, they were wholly unauthorized by the local law and indeed were prohibited by its express provisions. In the light of this conclusion we are of the opinion that the lower court committed no error in overruling the challenge made by the answer to the capacity of the plaintiff to sue in revendication (ejectment) upon the assumption that he was bound first to seek the rescission of the partition proceedings and to obtain an annulment of the order of the judge approving the same, since it is impossible to conceive that the preliminary duty existed to obtain the annulment of that which was already null or to seek to rescind that which never in contemplation of law had any existence whatever. In passing we observe that the contention that the plaintiff as the sole heir of his father's estate and as such the owner of the entire property sued for was without capacity to sue is, we think, refuted by its mere statement.''

A perusal of the foregoing suffices to show that as to the fundamental question of the validity or invalidity of conveyances made directly to creditors in satisfaction of their claims in the partition of an estate in which minors are interested without first obtaining the authorization of the court generally required by law for the sale of property belonging to minors, the opinion of the Supreme Court of the United States is in conflict with the opinion delivered by the Supreme Court of Porto Rico a few days before. The Supreme Court of the United States, which has appellate jurisdiction over the Supreme Court of Porto Rico, held that such conveyances are null and void and its doctrine must prevail no matter what opinion all or some of the justices of this court may continue to hold.

This fundamental question being decided in the sense in-

dicated, we will proceed to consider and decide the other questions involved in these appeals.

The title given by the defendants to this action was that of "ejectment" and from a careful consideration of the judgment appealed from it will be seen that the court dismissed the complaint precisely as to that part thereof praying for the reinstatement of the plaintiffs in the possession and ownership of the real property claimed by them, and no appeal from that pronouncement has been prosecuted to this court. In the opinion on which the district court based its judgment it pointed out the fact that the court did not acquire jurisdiction over all the persons who had an interest in the estate of Luz María del Rosario and cited the decisions of this court in the cases of *Dávila* v. *Dávila,* 18 P. R. R. 112, and *Trinidad* v. *Trinidad,* 19 P. R. R. 616, in which the doctrine is laid down that an inheritance title is not sufficient of itself upon which to recover a certain and specific part of a property belonging to the estate before the estate has been partitioned and distributed.

We cannot now consider or decide whether the theory maintained by the trial court is correct or whether the jurisprudence it cites is applicable to this case. We have said already that no appeal was taken from the pronouncement regarding the restitution to the plaintiffs of that part of the property sued for in the complaint and therefore we cannot review the same.

The anomalous position in which we find ourselves makes it difficult for us to give this case a thorough consideration. However, there is no doubt that several prayers are included in the complaint, among them that for the annulment of the conveyances referred to therein, which annulment, under the theory adopted finally by the trial court, came to be the only question which it could decide definitely in this action. Applying the doctrine of the Supreme Court of the United States, it must be admitted that the conveyances made to

defendants Rucabado and Otero are absolutely void as to that part of the property conveyed which may belong to the minor heirs, and as said defendants Rucabado and Otero had their day in court, we are of the opinion that the judgment appealed from should be allowed to stand as to them in the form in which it was rendered by the trial court.

The claim for rents and profits of the joint interests to which the complaint refers is incidental to the action of eject-ment brought by the plaintiffs and dismissed by the court. All that we have said regarding the main action is therefore applicable to the incidental claim.

As to the costs, it not having been shown that the district court in holding as it did abused its discretion, the conclusion reached in its judgment should not be disturbed by this court.

In view of all the foregoing we are of the opinion that the appeals of both the plaintiffs and the defendants should be dismissed and the judgment appealed from affirmed as to all its pronouncements which have been made the subject of review by this court.

*Affirmed.*

Mr. Justice Wolf concurred.

Chief Justice Hernández and Justice Aldrey dissented.

Mr. Justice Hutchison took no part in the decision of this case.

### CONCURRING OPINION OF MR. JUSTICE WOLF.

I entirely agree with the foregoing. The requirement of a previous judicial authorization is an opinion I have always entertained. I agreed with the former opinion delivered in this case because, after having considered the several deci-sions of the General Directorate of Registries upon this ques-tion, the fact seemed to have been definitely settled that when in the distribution of an inheritance there were minors and property was adjudicated to an heir for the payment of the ancestor's debts the judicial authorization subsequently grant-ed was sufficient and indeed I was unable to draw any distinc-

tion between that case and that wherein the property is directly adjudged in the partition to the creditor in satisfaction of his credit. In both cases I overlooked the fact that the fundamental question involved was the alienation of the minors' property for which the prior judicial authorization always was an indispensable condition.

### OPINION OF MR. JUSTICE ALDREY IN WHICH MR. CHIEF JUSTICE HERNÁNDEZ CONCURS.

Luz María del Rosario having died intestate in the town of Cayey of this island on October 25, 1902, his widow and his six legitimate children were designated as his intestate heirs. By a judgment of court six other children were adjudged to be his acknowledged natural children with the right to participate in his estate. One of these predeceased him and was represented by his grand-daughter.

Attorneys Antonio Sarmiento and Luis Muñoz Morales were appointed to partition and distribute the estate of Luz María del Rosario among all these heirs and their inventory, appraisement, liquidation and division of the same were approved by the District Court of Humacao and protocoled in a notary's office on June 4, 1904. In these proceedings the legitimate children were represented by a defensor appointed by the court on account of their minority and the conflicting interests of their mother, and debts were acknowledged in favor of Mateo Rucabado, Manuel Otero Valera, Robustiano Meléndez and José Ramírez Muñoz, in payment of which certain real properties which formed a part of the estate as individual properties of the intestate were conveyed to the said debtors who took possession of the same and recorded their ownership thereof in the registry of property. According to that deed the legitimate children were the owners of a third part of the estate of their father.

In such circumstances this action was brought by the legitimate children of Luz María del Rosario and on the ground

that as they were minors at the time, the said properties could not be conveyed to the creditors without authorization of court and that a third part of the properties so conveyed belonged to them, they prayed the court as follows: 1. To adjudge that the conveyances made to the creditors are null and void and without legal force and effect as to a third part. 2. That the records entered in the registry of property by virtue of said conveyances should be canceled as to a third part. 3. That the said persons to whom the conveyances of the properties were made pay to them certain amounts for rents and profits produced and not received by the plaintiffs during the time they were dispossessed of their joint ownership. 4. That the plaintiffs be reinstated in the possession and ownership of a third part of each and all of the properties conveyed. 5. That the defendants pay the costs and the fees of the plaintiffs' attorney.

At the trial the plaintiffs waived their claims against Robustiano Meléndez and José Ramírez and the complaint being thus reduced to their claims against Rucabado and Otero, the District Court of Guayama, in which the action was brought, rendered judgment sustaining the complaint as to the first and second prayers and dismissing it as to the third and fourth, the said judgment being as follows: 1. That as to a third part thereof, the conveyances of properties made to Rucabado and Otero in the partition of the estate of Luz María Rosario are null and void and without any force and effect. 2. That as to the third part claimed by the plaintiffs, the records of such conveyances should be canceled in the registry of property, all without special imposition of costs and without prejudice to any right which the plaintiffs may have to the rents and profits alleged but not proven.

Defendants Rucabado and Otero appealed from that judgment, which is prejudicial to them only on two points, and the plaintiffs also appealed and stated in their notice of appeal that they were not satisfied with that part of the

judgment which refused to allow them the rents and profits of the properties in question and the costs, expenses and attorney fees.

Both appeals were disposed of by this court in its judgment of May 24, 1915, dismissing that of the plaintiffs and sustaining that of the defendants. The judgment of the lower court was reversed as to the part appealed from by the defendants and the complaint was dismissed on the ground that the conveyances made to the defendants in payment of their claims were not null and void; but the plaintiffs moved for a reconsideration of the judgment mainly on account of the subsequent decision of the Supreme Court of the United States in the case of *Longpré* v. *Díaz*, 237 U. S. 512, and a rehearing of the case was granted.

We concur in the opinion of Mr. Justice del Toro as regards the reasons for reconsidering the former judgment and ordering a rehearing of the case.

Having reviewed this case a second time, we again hold that the judgment should be reversed and the complaint dismissed inasmuch as the case of *Longpré* v. *Díaz, supra,* cannot be applied to this appeal, disagreeing with our two associates on this point.

The plaintiffs not only titled their complaint "in revendication" but clearly brought an action of ejectment, for they alleged that they were the owners by inheritance of a third part of certain real properties in the possession of the defendants and prayed in their fourth prayer that they be reinstated in the possession and ownership of such third part, which prayer was denied by the trial court, and notwithstanding this fact they stated in their notice of appeal that they were not satisfied with the judgment only in so far as it denied them the rents and profits of the third part of the properties claimed and the costs. If, then, the judgment denied restitution to the plaintiffs of the third part of the properties claimed and they did not appeal from that pronouncement, they not

only have no right to the rents and profits of the third part of the properties, because that claim was incidental to the recovery of the property which was denied and therefore the appeal of the plaintiffs on that point cannot prosper, but the court has no jurisdiction of such question of restitution because no appeal was taken regarding it and a consideration of the case of *Longpré* v. *Díaz, supra,* would serve no practical purpose, for it having been adjudged, and not appealed from, that the plaintiffs have no right to the restitution of the third part of the said properties, as claimed, it is not necessary to consider and decide as to whether the title asserted by the defendants is or is not null and void, since such decision would be the effect of the right to recover the property and when that right is denied the title of the defendants cannot be discussed. Before the court can pass upon the title of a person from whom it is sought to recover specific property it is necessary that the title of the person seeking to recover be proven, and as in this case the court denied the right of the plaintiffs to recover it would not be proper to pass judgment on the title of the defendants.

It is true that besides the allegations in support of the action of ejectment the complaint contains others to show that the title of the defendants is null and void and prays that it be so adjudged, but as the title under which the plaintiffs claim in this suit does not necessarily arise from the nullity of that of the defendants, such allegations of nullity should be considered only as an anticipation of defense (*Oliver et al.* v. *Oliver,* ante p. 168,) and consequently should not be considered when the action does not prosper.

In consonance with the foregoing doctrine, in the case of *Cristián et al.* v. *Escobar et al.,* ante p. 257, this court said:

"Respecting the annulments prayed for in the complaint, as they are not the cause but the effect of the principal action of ejectment, and as the action does not lie, it would be superfluous to consider them. Judgments of the Supreme Court of Spain of October 16, 1873; January 17, 1889; April 6, 1889, and February 13, 1882,

and decisions of this court in the cases of *Succession of Nieves* v. *Succession of Sánchez,* 17 P. R. R. 837, and *Oliver* v. *Oliver,* decided July 30, 1915."

The plaintiffs having no right of action to recover the third part of the properties referred to, for that is what the pronouncement of the judgment denying restitution, which was not appealed from, amounts to, what right have they to the annulments and cancellations granted them by the judgment? The latter pronouncement is incompatible with the former. There is a contradiction *in terminis.*

As regards the appeal of the plaintiffs from the part of the judgment of the lower court refusing to allow them the costs, we agree with our two associates in the reasons stated for not sustaining the plaintiffs. It may be that they have not followed the proper procedure on this point, but it is not incumbent upon us to indicate to them what that may be.

For the foregoing reasons the appeal of the plaintiffs should be dismissed and that of the defendants sustained; consequently the complaint should be dismissed without special imposition of costs.